Thank you Mr. Hellis, Mr. Scheller, and Mr. Fullerton, are you all there? Daniel Hellis, I'm present, Your Honor. This is Brendan Scheller. Good morning, Your Honor. Good morning, Mr. Fullerton, are you there? Yes, I am, Your Honor. Good morning. Good morning. Oh, happy day. Oh, happy day. How wonderful to hear your voices. Did you hear my little foreword earlier about the fact that there will probably be times when we're speaking over each other? Yes. Oh, you did. Oh, that's wonderful. All right, then we shall begin. Let's see. Case number two, and it's appeal number 1917-44, 1917-45, United States v. Charnpal Ghuma and Khan. And who is going to argue first, please? I will, Your Honor. This is Daniel Hellis. Thank you, Mr. Hellis. You may start. Thank you. May it please the Court, Counsel, my name is Daniel Hellis, and I'm with the Federal Public Defender's Office. I represent Mr. Ghuma. He raises two issues. The first issue is since his 7207 conviction, the false tax return, is a Class E felony that carries a maximum one year of supervised release, the District Court erred by giving Mr. Ghuma three years' supervision on that kind of conviction. There is no dispute from the government that the imposition of supervised release would satisfy the first two plain error factors because under the statute, since it's a one-year maximum, giving three years would be an error that is plain. The sentence also satisfies the third and fourth plain error factors, though, and this is what's disputed by the government. As for the third factor, the sentence that exceeds the statutory maximum seriously affects a defendant's substantial right to be free. And, of course, you know, since there are consecutive, excuse me, two terms of supervision, that in the event of a revocation, Mr. Ghuma risks consecutive imprisonment on the two counts under the Deutsch decision of this Court. And so, consequently, my client could go to prison for more years in the event of a revocation, and not to mention being supervised on the two counts of conviction for that time, even though there is a valid three-year term of supervision, the risks are nevertheless present to satisfy the impact on his, the substantial effect on his right to be free. And, furthermore, that affects the fairness, integrity, and public reputation of the judicial proceedings. And we rely on our briefs in the 11th Circuit decisions of Walker, Eldred, Cobbs, and the 10th Circuit case that Chico, I think, are especially informative on this. So unless the Court has questions on this, I'll turn to the second issue. My only question, Mr. Hillis, about the supervised release issue is why you think it requires a complete resentencing to reduce one of two concurrent supervised release terms. We recognize that it's the Court's discretion under circumstances such as this, but my client is very interested in going back to court to address the second issue more fully to the district court satisfaction and to say nothing of the present health considerations that motivate anybody's interest in going back for resentencing and trying to get the sentence reduced. Those are all things that are at play in this part of the sentencing package. I believe that this Court, more than ever, could exercise its discretion to demand for a complete resentencing under these circumstances, Your Honor. Why don't you go into acceptance of responsibility? Yes, Your Honor, I will. So that is the second issue that my client raises, and we believe the district court wrongly denied his acceptance of responsibility reduction. The district court, in our view, inherently applied the guideline 3E1.1A, made inadequate findings, and used incorrect and unreliable evidence in deciding to deny acceptance of responsibility. So part of why the judge denied the reduction was because he said Mr. Grumman didn't fully admit his wrongly offense and that Mr. Grumman denied significant aspects of the offense. Mr. Grumman's version of the offense reads to me as if it were written by one of the buyers of the gas station. In other words, I knew that what the loan officer was asking me to do was wrong, but I went along. They certainly don't read as if Mr. Grumman was a perpetrator of the scheme. In that sense, why couldn't Judge Tharpe legitimately conclude that Mr. Grumman was not genuinely accepting responsibility here? I understood his version of the offense to admit his involvement in this as a major player and as well as providing false information about the equity for the loans and the documentation. So the district court didn't seem to pay attention, especially to pages 100 and 101 of the PSR, which was my client's version of the offense. And if the district court wished to have greater explanation on that subject, it could have asked. But I believe that the explanation that he gave admitted his role. And, of course, an individual isn't required to admit all of the relevant conduct. He can't falsely deny it. But my client did admit the offenses of conviction. Well, he falsely denied that he had altered documents and told others to use straw buyers. And if we credit Mr. Consproffer, the judge found that he had not fled to India for purposes of seeking health care, nor had he abandoned the substantial assets he held in India, as he had also represented. So you have to be very careful when you use, you know, the words he did not lie. Your Honor, if I may, I would say that by admitting the lack of equity and provision of false documents, I thought that that was sufficient, and I still continue to think that's sufficient, to say about his wrongful activities in the course of this scheme. And as far as the assets in India goes, my client tried to explain to the district court, and did, that those assets had essentially been made worthless and had been abandoned. And, of course, he was deemed indigent for purposes of this appeal. And that suggests very strongly that he does not have those assets the district court was concerned about. And it was the district court, ultimately, at the later stage, that found my client indigent for purposes of this appeal. So I don't think that those things could be easily reconciled. And if I may, Your Honor, as to the proffer, the judge relied on proffer statements and grand jury transcripts. And, of course, proffer statements are akin to police reports. We know that police reports are not categorically reliable, and so defendants should have the opportunity to confront those witnesses or to have some form of examination on the subject. My client didn't have that. And the grand jury transcripts are essentially the government's effort to put one side of information before the grand jury, again, without any cross-examination. And these materials were not corroborated, yet the district court accepted them fully. We found that to be a problem as well, and we rely on the Campbell decision from this court for that. Is it correct, then, Mr. Hillis, that your client knew those materials were before the judge and had an opportunity to rebut them? Well, Your Honor, there's no doubt that the materials were before the judge, but there weren't loads of materials before the judge. If the judge wished to rely on those, I think that it would have been fair of him to know which materials he was going to rely on to give my client the chance to respond. My client doesn't want to waste the court's time by going through every document that has been submitted by the government, especially in a voluminous case, to say, you know, we dispute this, and here's the reasons why. I think that's not a very efficient way to do this, and so my client didn't really have the opportunity to respond and contest. So you think the judge should have laid out his tentative decision and reasoning and then said, what do you have to say about that? I think it would have been fair under these circumstances, since this is a multi-phase proceeding at this point. It went from, I think we had two verdicts for attendance and hearing, and then moved down to restitution. I think that it would have been appropriate for the judge to do exactly that. If I may, the judge also, in a peculiar fashion, took issue with my client's, what he said was a lack of admission, and of course we know that a lawyer speaks for a client. We cited the Johnson v. McBride case in our brief, and yet the judge didn't seem to credit Mr. Blumen's counsel by making the statements that were made about his admissions, et cetera. My client made the admissions of his own that are reflected in pages 100 to 101 of the PSR. He also entered a guilty plea, admitting his offense, conduct. There seems, in our view, to be very stark inconsistencies in the judge's decision here to deny acceptance for the reasons that the judge did. If I could just ask a quick question. The district judge was obviously conscious of and discussed the difference between silence and false denial in the note on the acceptance of responsibility guideline. Your argument reads as if, well, I admitted the elements of the offense of conviction, and that ought to be enough. Yet that's clearly not the law, right? That's correct. My client did not falsely oppose any relevant conduct, didn't falsely deny it, and the judge ultimately, in examining the relevant conduct, didn't find my client either falsely contested or frivolously denied any challenges, Judge. He didn't? I thought I read that as a pretty thorough and detailed explanation of ways in which he was denying and minimizing. Well, Your Honor, I would think then that would have been the precursor to an obstruction of justice determination, and I suppose, in your view, my client may have been lucky that he didn't get that, but I don't find that to be the same impediation, perhaps, that Your Honor does. And not to mention, that was all part and parcel of the judge's determination that relied, of course, on some information that we think was incorrect and shouldn't have been considered. It was bolstered by the grand jury testimony, the proper notes, and some other things that worked its way into the judge's analysis. So, for us, there's a massive information that my client should have been able to more fully respond to, and it might have made this a better record below, even on the subjects ultimately for the district court to fashion its determination on and denying the acceptance. Thank you. I think I have to stop you now, please. That's fine, Your Honor. Thank you. Thank you. And Mr. Schiller? Good morning, Your Honors. Thank you, Your Honors, all of you. Thank you all of you and the clerk for taking these unusual steps in these extraordinary times to keep everybody healthy. And thank you. Thank all of you. I represent Defendant Aga Khan. All three issues raised are really subparts of one issue, which is restitution, and whether or not the district court judge recognized the true authority he had under the Mandatory Victim Restitution Act. Well, given Judge Sarp's finding that the bank was not holding onto the unsold properties as an investment, doesn't the Robers case make clear that Mr. Khan was not entitled to credit the value of those properties in the restitution calculation? I don't think that's what Robers says at all. Robers is different in two ways. It's different temporally and qualitatively. It's looking backwards in a situation where the property was, in fact, sold at a cheaper price than it was originally valued at when the fraud occurred. And the defendant in Robers was arguing we should get the value of the original price. And the Supreme Court said no. What was defrauded was the money. And in Robers, when the defendant said, well, if you're not going to give us the value of the original price, you're only going to give us the value of the later sale, then that creates a moral hazard. And the Supreme Court said no, it doesn't create a moral hazard. Look at Section 3664F2 and 3664F4. And specifically in 3664F4, it says in a situation where the bank doesn't sell, not this situation in Robers where they sold for a lesser amount, but where they don't sell and they do hold onto the property, the district court has the authority, it's not required to, but has the authority to make an assessment based on an in-kind restitution the current value of that property.  And the specific site is 134 Supreme Court, 1854 at 1862. I'm sorry, no. I'm trying to take advantage of being on the phone. Headnote 10. And the quote is, Section 3664F4 defines in-kind payment as including replacement of property, subquote. These provisions would seem to give the court adequate authority to count as part of restitution paid the value of collateral previously received but not sold. What the Robers court was dealing with, as I said before, is a distinctly different situation here where the victim sold the property for a lesser value later and got money in return. The Rober court said if you have a situation such as this, which they weren't addressing, where the victim keeps the property, the district court has the authority to value that property. And the district court says I don't even have that authority. And that's not what the Robers court said. And, in fact, in A2, the Robers court, I mean, in F2, the Robers court said not only can they count the currently held property as collateral if it wasn't sold, you can fashion a restitution order that takes into account future sales. Presumably that would mean an actual restitution order that says if the victim sells in the future, they should report that amount sold for even if it's substantially less, and that can be reducted from the restitution. Again, the issue here is not whether or not the district court chose not to do this with its authority. The issue here is the district court said it didn't have that authority. When I think in the plain language of the statute, the plain language of Section 3664F2, it had that authority.  The government even cites in its own brief the language which gave the court the authority to create nominal or minimal periodic payments based on Mr. Kahn's very minimal assets. The fact that he does have his assets were jointly held by his wife who was raising two very young children. All of that is relevant under the case law, and even under day, which the government cites. They said that. They remanded the case to at least assess, to give the district court the opportunity to assess whether nominal periodic restitution payments was appropriate given the defendant's financial condition. In all three of these instances, the district court said, I don't have the authority. I'm using my discretion to deny it. He doesn't have the authority, and that's not what Rovers said. As I understand it, Judge Tharp waived interest, set his payments at 10% of his net income. Doesn't that show that Judge Tharp did consider Mr. Kahn's financial circumstances? Well, I'm not sure if he waived interest. I think I don't remember that from the record, but his own words on pages 51 and 52 of the appendix, his own words say he doesn't have the power to consider that, and he didn't want to consider any arguments in terms of how to structure the payments. So, yes, the fact that he set it at a percentage does evince some, evince that he used the authority that he said he didn't have, but his own ruling wouldn't consider other options. If I can go back, I think where the confusion is in Rovers, and this is now like the third time I've had to argue in brief, is at the very beginning the summation of Justice Breyer's ruling seems to say that only the money is considered. But, again, that's in context. That was a situation where the property had already been sold, and what they were saying is where the property is sold, it's the money that was defrauded, so it's the money that's valued. We don't care what the property was valued at X number of years ago. But that simple statement and the conjecture that applies to this case, or not the conjecture but the projection that applies to this case, is defied by the rest of the ruling that says you have these other sections. You have Section F2. You have Section F4. The court can consider this. And the math on this is pretty stark. I know the audience have read the briefs, but if you look at page 38 of the government's brief, which references the judge's order, and page 43 of our attendance, that's the first set of facts that matter, right? $22 million, essentially minus $8 million of the stuff that had been sold. The second fact that matters is on page 9 of our brief, and then 12 properties that the bank currently holds onto. So the bank currently has those 12 properties, and whether you take Grumman's experts that they're worth $8.5 million or anything else, we know that those 12 properties clearly have value. So why can't the court, what is it in Rovers or in the MRBA that says the court cannot consider the value of that, especially if the bank is going to later sell them or just hold on to them and make use of them? They clearly weren't deprived, though, of the value of that. It just seems like this is a windfall for the bank, and there's clear opportunity for the district court to rectify it. Is there any reasonable possibility that Mr. Kahn is going to be able to pay so much restitution that the value of the properties still held by the bank will become relevant? So I actually think that Mr. Kahn is an extraordinary person who, if you look back at the sentences, even during the five years he was under pretrial in this case where he was towing every legal line, he was grossing until he pled guilty nearly a million dollars a year because he has extraordinary skill as a salesman, organizer, and manager. Now, it's going to be much more difficult with a felony conviction, but he has friends in the telecommunication industry who know his value, his skill as a manager, organizer, and a salesman. I actually think this matters a lot, and this is why, frankly, I was hired not to address his three years in prison but to address whether or not he's ever going to be able to be in a position to raise his children, to financially provide for his children and his wife. And so, yeah, I think this matters a lot. He thinks it matters a lot. Thank you. Thank you very much, Mr. Schiller. And Mr. Fullerton? Yes, Your Honor. May it please the Court, good morning. Good morning. The district court correctly denied the acceptance of responsibility credit for Mr. Gumon. You know, Mr. Gumon pleaded guilty. He admitted the conduct involved in the offense of his conviction. That was a fraud scheme that has charged in the indictment, spanned a multiple number of years. But that's not enough to entitle him to, by itself, it's not enough to entitle him to the acceptance credit. And the district court properly considered Mr. Gumon's statements regarding relevant conduct, regarding his role in the offense, regarding what he did and what others did in the offense, and found that Mr. Gumon had not accepted responsibility. In fact, the district court made extensive findings regarding Gumon's lack of acceptance. And those findings included a finding that Gumon had falsely denied recruiting others to take out fraudulent loans, that he had falsely denied altering documents involved in the loans, falsely denied that he had told others to use straw buyers to take out loans, and also the district court did not credit Gumon's statement to probation that took him some time to realize that he was involved in a fraud scheme. I mean, the district court properly understood Gumon to have been the motivating force, the main player in this fraud scheme, and that he, from the very beginning, knew that there was a fraud. He was the directing member of the scheme, and the court properly found that this was not credible. The court, I mean, Gumon also went so far as to, you know, blame the bank for its role in this fraud scheme, went after one of its founders and a member of the board of directors, Mr. Forsyth, and accused him of profiting from the loss involved with these properties. This is not even a close issue that the court did not give Mr. Gumon acceptance of responsibility. One, just one, you know, one aspect of this, it's undeniable that would by itself, you know, disentitle Gumon from acceptance is his, when the district court found that he did not credit Gumon's account of his assets in India. If you will recall that the government had come forward with evidence that Gumon had stated, I think as recently as 2008 or 2009, that he had investments in India of worth some like $9 million. And later at sentencing, Gumon attempted to say, well, I've abandoned them. They're not worth, they're not worth anything anymore. I don't have anything to do with them. And the court simply did not credit that. That on its own would be grounds for denying acceptance of responsibility. So again, I don't, I don't think it's even close. And I don't think there was any error on the court's part in failing to credit the lawyer versus crediting or not crediting the client. The Gumon's lawyer and himself were all on the same page about his role in the offense. They attempted to minimize, they portrayed him as a passive participant in a fraud scheme that had been, I guess, originated by the bank and involved other people, but the Gumon was, although I think they said the words of major player, everything that was involved with their portrayal at sentencing undermined that categorization. So the district court correctly denied him acceptance on the, on the issue of a supervised release on the tax count. Yes. The district court erred in, in sentencing Mr. Gumon to three years supervised release on the tax count. There was only one year was authorized by the statute. So that's an error that's clear and plain, but I don't think it prejudices Mr. Gumon. He's got a three year term of supervised release running concurrently. How do you respond? This is Judge Rovner again. How do you respond to Mr. Gumon's point that the three year supervised release term on the tax return count could have adverse consequences if he were ever found to be in the district court? Well, I don't, I think it would only come into play in the second or third year of his supervised release after the authorized term of one year on the tax count had expired. And only if a district court in sentencing Gumon on the supervised release violation or to impose a sentence, an unlawful sentence on the, on the unauthorized tax count super violations, you know, supervised release violation. You follow me that there would have to be a compounding of the error by the district court on a supervised release violation to imperil Mr. Gumon's liberty as a result of this error. And I think that's unlikely. An error that's so easy to adjust. Is it not? Yeah, it is easy to adjust. And I, you know, in the alternative, I think the court can just correct it on its own. I don't think any remand for resentencing would be required. I think it's abundantly clear that the judge intended a maximum term of three years supervised release on both counts to run concurrently and nothing in the record would indicate that anything else depends upon the second and third years of supervised release for this tax count. So I think the court, you know, if you wish, you could just correct it.  The district court correctly denied con credit for the return of the collateral on the unpaid loan. This was con had borrowed money or the scheme involved borrowing money, not gas stations. And when the fraud scheme fell apart, con and the others returned some money. But as to these particular properties, they returned the property and not the proceeds of the loan. That does not count as restitution as rovers says. And con is not entitled to credit for the return of those, the return of the collateral until those gas stations or other properties sell. I don't think this amounts to windfall for the bank. The bank is not in the business of running gas stations and convenience stores. The bank would like to sell the properties. The district court found that the bank had been trying to sell the properties but was unable to do so. But in the event or when and if the bank does sell the properties, guman con and anybody else should get credit on restitution for the cash that is realized on the sale of the properties. The district court made it clear that this is a, he did not want to award a windfall of restitution to the bank and that the statute provided that guman and con would get credit when those properties do sell to avoid the prospect of a windfall and rovers talk to them. Yes. Yes. Help me out here. I understand that point in theory, but I don't understand in practice how that might work in the period of years after the criminal judgment becomes final. Is there a process for the bank to, it requires them to notify your office or the court when those properties are I'm not, I don't know your honor. I don't, I'm not involved in collecting financial things like restitution or fines or things like that. But I do know from reading the cases that there are procedures available in post judgment collection proceedings where let's say Mr. Conn,  Mr. Conn pays, you know, $4 million and he's concerned that now anything more than that will have been already covered by the sale of the properties by the bank. I think at that point he could under the statute go to court in a, like I said, a post judgment petition to seek credit for any properties that the bank had sold. And that's one of the issues that came up in that chef, I don't know how to pronounce it. Chef S H E T H case that this court decided recently. And it's a topic of discussion and I believe it was in Dawson as well. We're certainly not opposed to him getting credit and he ought to get credit. And there are procedures available under the statute and for him getting credit. So I think the court properly understood rovers, not to give him, not to allow for him to get credit upfront, but rather as things proceed when and if the bank sells the property on the issue of his financial means. I think Mr. Conn is mistaken about the court's ability to take into account his financial means when he's awarding restitution or determining the restitution amount that is precluded by the statute. The court is allowed to consider his financial means when setting a restitution schedule, payment schedule. And the court did that here. The court waived interest that's reflected in the judgment. There's a box on the judgment order. That's checked. It says the interest is waived. And the court said, specified that no restitution payments were due while Mr. Conn is incarcerated, but that upon supervised release, his beginning of his term of supervised release, he would have to pay 10% of his net monthly income that appropriately takes into account. Mr. Conn's limited financial circumstances, his need to care for his family and pay for his own living expenses. And, and yet, Mr. Conn also of course takes into account the need to make restitution to this bank that he defrauded. So with the, with the limited exception of that issue on, unless there's any other questions with the limited exception of that issue about Mr. Gorman's supervised release on the tax count, which the court could just correct here on appeal, we'd ask that the, we ask that the court affirm the judgment of Gorman and Conn in all of the respects. Thank you, Mr. Fullerton. I take it. No one has any other questions. None from me. Then we have Mr. Hillis with two minutes of rebuttal. Thank you, judge. The government said that my client's explanation of assets wasn't plausible. But I think that's impossible to reconcile. Ultimately with the district court's determination that my client qualified for informal proper status. If you have assets, you don't qualify for ISP typically. And my client's determination by the court on this issue is a significant thing. And it was unrebutted when my client provided information to say that the assets were worthless and no longer really part of anything that he owned. As far as the false denials that the government says, again, the PSR at pages 100 to 101, my client admits that he made incorrect HUD statements, that equity is not provided by buyers, and that he provided false equity checks from his own account. If those admissions weren't specific enough, the district court could have asked, we believe should have asked. In any event, we say a remand would be appropriate to go through these things more specifically than was done before, especially given that this case should be remanded for the supervised release issue. And it seems like the government's sort of begrudging estimation of the third and fourth plane air factors, but the additional supervision poses additional risk of imprisonment. And that itself is a basis for remand. We would ask under the unusual circumstances presently in the country with the risks that are particular to my client, as he's housed in places where folks are most at risk to consider a full remand, given the case. And with that, I have nothing further. And thank you so much, Mr. Schiller, you have three minutes of rebuttal. Are you there? Mr. Schiller. Hello. I'm sorry. I'm sorry. I had you on mute. Can you hear me? Yes. That's okay. I apologize. Thank you, Your Honor. I have just two brief points to make a rebuttal. One is if in fact you read rovers to say that the only time a defendant gets credit for a restitution of currency for collateral currently held by the victim is when the property is sold. Then you are in fact creating a scheme where there's a windfall and you're not craving section F four of the MRDA. There are scenarios where a bank or any other victim could hold on to the collateral property and make value out of it without selling it. And there's scenarios where they can hold on to it until restitution was completely paid and then sell it. So I don't think that that's what rovers means. And I don't think that that's what Congress meant when they wrote the statute and they clearly included that section. The second issue is exactly what judge Hamilton raised, which is for all intents and purposes by the judge saying, I don't have the authority to do it, but the defendant can come back if he finds out that this property is sold created a practical matter, something that's untenable, how there's no mechanism by which we will know the property sold. And that's, I guess, Mr. Conn hired me to diligently check every three or six months to see if something was sold and what was sold for. That doesn't seem fair or efficient. And so, and again, yeah. So I think if we're, if we're not going to get credit for the collateral, now, I think a simple order that says the bank has to inform either the DOJ or probation, whenever they sell the property and the value that's sold, that would be sufficient. And just getting that information and then having probation reduce it from the restitution award seems very fair, very efficient and conforms with the law. So if there's no other questions, I thank you all again for your time. And we'd ask that let's get remanded for new hearings on restitution. And we want to thank Mr. Hillis, Mr. Schiller, Mr. Fullerton, and the case will be taken under advisement.